UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN L. FAVAZZO, | ) | Case No. 5:18CV2333 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |

Plaintiff Susan L. Favazzo ("Favazzo" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a

period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42

U.S.C. § 405(g), and the parties have consented to the undersigned having jurisdiction over this

case. The issue before the court is whether the final decision of the Commissioner is supported

by substantial evidence and, therefore, conclusive. For the reasons set forth below, the

Commissioner's final decision is affirmed.

## I. PROCEDURAL HISTORY

On December 22, 2015, Ms. Favazzo filed an application for a POD and DIB, alleging

disability beginning August 18, 2015. (R. 11, Transcript ("tr."), at 15, 168-174, 191-193, 194-

201.) Her application was denied initially and upon reconsideration. (*Id.* at 15, 82-93, 84-106,

107-109.)  Thereafter, Ms. Favazzo filed a request for a hearing.  (*Id.* at 114-115.)  An

Administrative Law Judge ("the ALJ") held the hearing on January 5, 2018.  (*Id.* at 46-81.)  Ms.

Favazzo appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 48, 55-67.)

The claimant's husband also testified, (*id.* at 68-74), and a vocational expert ("VE") attended the

hearing by telephone and provided testimony.  (*Id.* at 48, 74-79.)

On March 21, 2018, the ALJ concluded Ms. Favazzo was not disabled.  (R. 11, tr., at 15-

39.)  The Appeals Council denied Ms. Favazzo's request for review, thus rendering the ALJ's

decision the final decision of the Commissioner.  (R. 11, tr., at 1-4.)  On October 8, 2018, Ms.

Favazzo filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C.

§ 405(g).  The parties have completed briefing in this case, and Ms. Favazzo presents the

following issues: 1) the ALJ erred when evaluating her treating source opinion and failed to

properly consider medical equivalence; 2) the ALJ's determination regarding credibility lacked

substantial evidence; and 3) the ALJ erred at Step Five of the sequential evaluation, as addressed

herein.  (R. 12, PageID #: 425.)

## II.  PERSONAL BACKGROUND INFORMATION

Ms. Favazzo was born in 1956, and was 59 years old, which is defined as an individual of

advanced age, on the alleged disability onset date, but subsequently attained the age category of

closely approaching retirement age.  (R. 11, tr., at 37, 56, 168.)  She has at least a high school

education, can communicate in English, and has past relevant work as Licensed Practical Nurse.

(R. 11, tr., at 37, 75, 194, 196.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Ms. Favazzo's brief alleging error by the ALJ. As noted earlier, Ms. Favazzo applied for DIB benefits on December 22, 2015, alleging disability beginning August 18, 2015. (R. 11, tr., at 15, 168-174.) She listed the physical or mental conditions that limit her ability to work as: "anxiety, general depression, severe panic disorder." (R. 11, tr., at 195.)

In August 2015, Ms. Favazzo sought leave from her then-current employment at Blossom Nursing and Rehab, under the Family and Medical Leave Act (FMLA). (R. 11, tr., at 256-259.) Physician's Assistant Jacquelynn Shank filled out an FMLA certification form on August 24, 2015, stating that Ms. Favazzo had symptoms of shaking, shortness of breath, sweating, crying, heart palpitations, and difficulty concentrating, with a past diagnosis of generalized anxiety disorder. *Id.* at 257. PA Shank stated she had referred claimant to a psychiatrist for possible cognitive behavioral therapy (CBT) and an evaluation for pharmacotherapy. *Id.*

In late 2015, Ms. Favazzo began treating with Clinical Neuropsychologist Suzanne Beason-Hazen, Ph.D. (R. 11, tr., at 290, 326.) On January 12, 2016, Dr. Beason-Hazen indicated that Ms. Favazzo's symptoms of "moderate depression" included a sad mood, guilt, feelings of failure, and decreased energy level and appetite. *Id.* at 290. She also had symptoms of "mild anxiety," including fear of the worst happening, nervousness, and feeling terrified. *Id.*

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

The psychologist reported that claimant had begun taking lorazepam (Ativan) and Buspirone in the fall of 2015, both of which have helped her.  *Id.*

Ms. Favazzo treated with Michelle Ahmed, D.O., from the summer of 2015 through the fall of 2017.  Dr. Ahmed's progress notes from a follow-up appointments on December 2, 2015, and February 2, 2016, report that Ms. Favazzo was assessed with generalized anxiety disorder and panic disorder without agoraphobia.  (R. 11, tr., at 293, 295.)  The doctor noted Ms. Favazzo was taking Buspirone for her anxiety, and Ativan for her panic disorder; and her medication was helping with anxiety, which was "at least 50% better."  *Id.* at 295.  During the December appointment, Ms. Favazzo was recorded as being 5'1" tall, her weight was ninety-three pounds, and she denied any change in appetite, any weight loss, or any trouble sleeping.  *Id.*  In February 2016, she weighed ninety-two pounds, and she denied any change in appetite, weight loss, or trouble sleeping.  *Id.* at 293. On both dates, Dr. Ahmed recorded that Ms. Favazzo appeared anxious, but was well developed and well nourished.  *Id.* at 293, 295.  The doctor reported that Ms. Favazzo had experienced some chest discomfort when very anxious or having a panic attack. *Id.*  She was administered an EKG, which showed normal results.  *Id.*

On March 29, 2016, state agency reviewing psychologist, Joseph Cools, Ph.D., determined that Ms. Favazzo had a medically determinable impairment, but it did not satisfy the diagnostic criteria for Social Security regulatory Listing 12.06 (Anxiety-related Disorders).  (R. 11, tr., at 86.)  Under the "B" criteria for these Listings, Dr. Cools assessed mild restriction in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace.  *Id.*

Dr. Cools also completed a mental residual functional capacity assessment. (R. 11, tr., at 88-90.)  He found that Ms. Favazzo was moderately limited in her ability to: maintain attention and concentration for extended periods; work in coordination with, or in proximity to, others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms.  *Id.* at 89.  Dr. Cools explained that anxiety impacted these abilities, but that claimant "appears capable of carrying out at least simple task instructions in a setting that does not require fast pace or strict production demands." *Id.*

Dr. Cools also found that Ms. Favazzo was markedly limited in her ability to interact appropriately with the general public.  *Id.* at 89.  The claimant was moderately limited in her ability to: accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior as well as adhere to basic standards of neatness and cleanliness.  *Id.*  Again, the psychologist explained that anxiety symptoms impacted these abilities; and he stated that claimant "appears capable of no more than occasional superficial interactions with familiar others in a non-public work setting.  *Id.*  Dr. Cools opined that claimant is moderately limited in her ability to respond appropriately to changes in the work setting.  *Id.* The psychologist stated that Ms. Favazzo appears capable to carrying out tasks in a routine and predictable work setting, where changes are infrequent and can be explained ahead of time.  *Id.* at 90.  Dr. Cools' overall opinion was that claimant retains the capacity to perform simple routine tasks with adequate pace, persistence and concentration, given the limitations noted.  *Id.*

During an April 15, 2016, appointment, Dr. Ahmed assessed Ms. Favazzo with generalized anxiety disorder and panic disorder without agoraphobia.  (R. 11, tr., at 320.)  Ms.

Favazzo continued to take Buspirone and Ativan, and the doctor reported that Ms. Favazzo was seeing a counselor, which "seemed to be helping a lot." *Id.* Ms. Favazzo's weight was recorded as ninety-three pounds, and she denied any change in appetite, weight loss, or trouble sleeping. *Id.* Dr. Ahmed again recorded that Ms. Favazzo appeared anxious, but well developed and well nourished. *Id.*

In a letter dated May 11, 2016, clinical neuropsychologist Dr. Beason-Hazen updated Dr. Ahmed on Ms. Favazzo's condition. (R. 11, tr., at 326.) Dr. Beason-Hazen reported that Ms. Favazzo had requested a brief evaluation due to memory concerns, and to assist in her application for disability. *Id.* Ms. Favazzo exhibited impairments in sustained attention, executive functions, visuospatial functions and memory. The psychologist noted that claimant's memory functions were mildly to moderately impaired, and she attributed many of claimant's cognitive impairments to her symptoms of moderate depression and severe anxiety. *Id.*

On reconsideration dated July 11, 2016, state agency reviewing psychologist, Joseph Edwards, Ph.D., also determined that Ms. Favazzo had a medically determinable impairment that did not satisfy the diagnostic criteria for Listing 12.06. (R. 11, tr., at 99 (PRT).) Under the "B" criteria for these Listings, however, Dr. Edwards assessed mild restriction of activities of daily living, marked difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace. *Id.*

Dr. Edwards adopted much of Dr. Cools's April 2014 mental RFC (R. 11, tr., at 101-103), with an identical assessment of her limitations in the areas of social interaction and adaptation. *Id.* at 102-103. Dr. Edwards, however, assessed that Ms. Favazzo was moderately limited in her ability to understand and remember detailed instructions, although she was capable

of simple, repetitive tasks. *Id.* at 101. Dr. Edwards also found that claimant was moderately limited in her ability to carry out detailed instructions, and concurred that she was moderately limited in her ability to: maintain attention and concentration for extended periods; work in coordination with, or in proximity to, others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* at 101-102. He stated that claimant "appears capable of carrying out at least simple task instructions in a setting that does not require fast pace or strict production demands; may require occasional flexibility for shifts and breaks due to symptom fluctuation." *Id.* at 102.

Dr. Edwards stated that Ms. Favazzo appears capable of carrying out tasks in a routine and predictable work setting, where changes are infrequent and can be explained ahead of time, with gradual implementation. *Id.* at 103. He explained that the evidence on reconsideration indicated some limitations in memory. *Id.*

During appointments with Dr. Ahmed on August 2nd and 23rd, 2016, to refill her prescriptions Ms. Favazzo's assessment included generalized anxiety disorder, panic disorder without agoraphobia, and "abnormal weight loss." (R. 11, tr., at 340.) Dr. Ahmed indicated that the patient was continuing to take Buspirone and Ativan, and she increased her dosage of the former. *Id.* The doctor reported that Ms. Favazzo was feeling depressed. *Id.* Dr. Ahmed ordered lab work tests to assess her weight loss. *Id.* However, Ms. Favazzo again denied any change in appetite, weight loss, or trouble sleeping. *Id.* Although the doctor's note assessed "abnormal weight loss" at these August appointments, Ms. Favazzo weighed ninety pounds, just three pounds less than at her April appointment, which noted no weight loss issues. *Id.* at 341, *see id.* at 320. Dr. Ahmed again recorded that Ms. Favazzo appeared anxious, but well

developed and well nourished.  *Id.* at 341.  During the August 23 appointment, the doctor reported that Ms. Favazzo was "doing pretty well, no concerns at this time."  *Id.* at 338.

In a "Summary View" dated November 21, 2016, Dr. Ahmed reported that Ms. Favazzo has good days and bad days but is "stable overall."  (R. 11, tr., at 356.)  Ms. Favazzo denied any change in appetite or problems sleeping, but reported diarrhea and weight loss.  *Id.*  The doctor reported that Ms. Favazzo was continuing to take Buspirone and Ativan.  *Id.*  Her weight was down to eighty-six pounds, she appeared anxious, but the doctor noted she was well developed and well nourished.  *Id.*

Ms. Favazzo appeared for a follow-up appointment with Dr. Ahmed on November 29, 2016, and reported that she was still in counseling, with some good days and some bad days.  (R. 11, tr., at 336.)  Ms. Favazzo's assessment included generalized anxiety disorder, panic disorder without agoraphobia, and irritable bowel syndrome (IBS) with diarrhea.  *Id.*  Dr. Ahmed indicated that the claimant was continuing to take Buspirone and Ativan; he directed that she "avoid dairy, consider smoothies to boost calories[,] no other issues[,] offered referral to [gastroenterologist] refused at this time."  *Id.*[2]  Ms. Favazzo reported weight loss, but her appetite was "still fine though."  *Id.*  Her weight was recorded as eighty-four pounds, and the doctor noted her general appearance was "anxious appearing, well developed and well nourished."  *Id.*

During a February 28, 2017, follow-up appointment with Dr. Ahmed, the doctor assessed Ms. Favazzo with panic disorder without agoraphobia.  (R.11 at 334.)  Ms. Favazzo denied any

---

[2] That record also indicates that Ms. Favazzo saw a gastroenterologist two years earlier and dairy products "give sx [symptoms]."

change in appetite or any weight loss, but acknowledged having diarrhea; her weight was again recorded as eighty-four pounds, and her general appearance was "anxious appearing, well developed and well nourished." *Id.* Dr. Ahmed noted that Ms. Favazzo was "overall doing about the same but still in counseling." *Id.* At a May 30, 2017, follow-up appointment, Ms. Favazzo reported having diarrhea; her weight was recorded as eighty-five pounds, her general appearance was "anxious appearing, well developed and well nourished" (R. 11, tr., at 332); and Dr. Ahmed noted that claimant was continuing to see a counselor, but she was often anxious and depressed. *Id.*

Ms. Favazzo continued to see clinical neuropsychologist Dr. Beason-Hazen for psychotherapy to treat her symptoms of anxiety on a monthly basis from August 2016 through July 2017. (R. 11, tr., at 348.) The psychologist completed a mental residual functional capacity assessment form on August 9, 2017. *Id.* at 351-354. Dr. Beason-Hazen indicated claimant's symptoms included appetite disturbance with weight change, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, emotional withdrawal or isolation, motor tension, easy distractibility, memory impairment ("perceived by pt."), and recurrent severe panic attacks. *Id.* at 352. Dr. Beason-Hazen opined that claimant's functional limitations were a moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintain concentration, persistence, or pace. *Id.* at 353. The psychologist estimated that Ms. Favazzo's impairments or treatment would cause her to be absent from work more than four days per month. *Id.* at 354.

At a follow-up appointment on August 29, 2017, Dr. Ahmed assessed Ms. Favazzo with generalized anxiety disorder and panic disorder without agoraphobia. (R. 11, tr., at 358.) Ms.

Favazzo was continuing to take Buspirone and Ativan, and declined a suggested change in medication for depression, saying that overall she believed she was doing a little better than her previous appointment. *Id.* Dr. Ahmed noted that claimant was "not any worse than last visit possibly more good days but not really sure either." *Id.* She denied any change in appetite or trouble sleeping, but she reported recent diarrhea with weight loss, she again weighed eighty-four pounds. *Id.* The doctor described her general appearance as "anxious appearing, well developed, well nourished." *Id.*

At the January 2018 hearing, Ms. Favazzo's husband testified that her anxiety and panic attacks were interfering with her ability to do normal daily activities and impacted her memory. (R. 11, tr., at 68-71.) He was concerned by her weight loss, and testified that ten years earlier, when claimant was working, she weighed 103 to 105 pounds. *Id.* at 72. Other than hearing testimony, the claimant did not produce any medical evidence of such a weight.

## IV. ALJ's DECISION

The ALJ issued an extensive thirty-nine page, single-space decision, which rendered the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since August 18, 2015, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: generalized anxiety disorder and panic disorder without agoraphobia (20 C.F.R. 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

10

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> - Can perform repetitive tasks that can be learned in a period of 30 days or less; cannot perform any tasks that involve high production quotas or fast-paced production demands (as encountered, e.g., in assembly-line production); but can perform goal-oriented work;
> - Can have only occasional interaction with coworkers, but can have no interaction with the public and requires a non-public work setting; and cannot perform any tasks that involve customer service duties, confrontation, conflict resolution, directing the work of others, persuading others, or being responsible for the safety or welfare of others; and,
> - Can adopt to only occasional changes in workplace tasks or duties, with any such changes needing to be gradually introduced and easily explained.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on *** 1956, and was 59 years old, which is defined as an individual of advanced age, on the alleged disability onset date.  The claimant subsequently attained the higher age category of an individual closely approaching retirement age (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2015, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 11, tr., at 17, 21, 25-26, 36, 37, 39.)

11

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Wilson v. Commissioner of Social Security, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.*  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII.  ANALYSIS

A.  Treating Source Opinion

Ms. Favazzo's first assignment of error combines two issues: "The ALJ [1] failed to properly evaluate the opinions of the treating source in violation of 20 C.F.R. § 404.1527 and [2] failed to properly consider medical equivalence."  (R. 12, PageID #: 425, 434.)  The court will first consider the treating source argument.  *See generally* R. 12, PageID #: 434-435, 437-439. Ms. Favazzo contends that the ALJ erred by assigning little weight to the opinions of her treating neuropsychologist, Dr. Beason-Hazen, and Dr. Ahmed.  *Id.* at 434.  The claimant argues that these providers had lengthy treating relationships with her, and "their opinions should not have been summarily discounted and disregarded."  *Id.* at 439.  According to Ms. Favazzo, her case should be remanded because the ALJ's decision lacks good reasons for the weight assigned to these providers' opinions.  *Id.*

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3]  *Shields v. Commissioner*, 732 Fed. Appx 430, 437 (6th Cir. 2018); *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-

---

[3]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.")  Plaintiff's claim was filed before March 27, 2017.

equipped to provide a complete picture of the individual's health and treatment history. *Shields*, 732 Fed. Appx at 437; *Blakley*, 581 F.3d at 406; 20 C.F.R. § 404.1527(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)). Although the ALJ generally accords more weight to a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating source(s). *Shields*, 732 Fed. Appx at 437; *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating source's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by considering specific factors set forth in the governing regulations. *Shields*, 732 Fed. Appx at 437; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). Although the ALJ is directed to

consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011). In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion. *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

The ALJ's decision addressed the opinions of the treating neuropsychologist, Dr. Beason-Hazen in some depth, as follows:

> Turning to Dr. Beason-Hazen as an additional treating source, the undersigned acknowledges the January 12, 2016 summary of initial diagnostic assessments and two counseling visits provided to Dr. Ahmed, which contains this introductory statement: "As you are aware, Ms. Favazzo is a 59-year-old married woman with symptoms of anxiety that have resulted in inability to continue working as an LPN in a nursing facility. She is applying for disability based on anxiety." (Ex. 4F/4.) The undersigned does not find any reasonable interoperation of such a statement to express an opinion by Dr. Beason-Hazen but rather a mere reflection of the claimant's presentation and subjective reports. At best, such a statement relates only to the ability to perform her most recent past job because of "anxiety," which again would receive little weight because it is a legal issue reserved to the Commissioner and her designees.
>
> In concluding her May 11, 2016 letter to Dr. Ahmed, largely in summary of the results from her brief neuropsychiatric [*sic*] evaluation[4] of the claimant, Dr. Beason-Hazen said that she "support[s] Ms. Favazzo's application for disability based on her persisting significant anxiety that limits her activity level and current cognitive impairments." (Ex. 7F/4.) As with the January 2016 statement, the undersigned does not consider this statement to reflect a clear "medical opinion" about the nature and severity of the claimant's impairments, but rather a statement only that the claimant is "disabled" because of her anxiety disorder and associated limitations and cognitive symptoms. This opinion thus also received **no controlling weight** and overall **little weight** because it is reserved to the Commissioner and her designees, and because it is not consistent with the

---

[4] The ALJ mistakenly refers to a "neuropsychiatric evaluation," but Dr. Beason-Hazen is not a psychiatrist. Rather, she is a Clinical Neuropsychologist. *See, e.g.* R. 11, PageID #: 290, 326. Dr. Beason-Hazen herself referred to the May 2016 evaluation as "a brief neuropsychological evaluation." *Id.* at 326.

16

moderate impairment on the neuropsychiatric [*sic*] Assessment summarized in the same correspondence.

On August 9, 2017, Dr. Beason-Hazen completed a form-based medical source statement that identified "F41.9" as the claimant's diagnosis (*i.e.*, an unspecified anxiety disorder), did not identify any clinical signs or other objective medical findings, and proceeded to identify a number of symptoms to include, for instance, generalized persistent anxiety and recurrent severe panic attacks, memory impairment, motor tension, mood disturbance and persistent disturbance of mood or affect, emotional lability and emotional isolation, and even appetite disturbance with weight change (Ex. 9F/5-6). Dr. Beason-Hazen then opined that these symptoms of anxiety disorder have caused some "moderate" restriction in terms of the claimant's activities of daily living, but only "mild" difficulties in broad areas of maintaining social functioning and maintaining concentration, persistence, or pace (Ex. 9F/7). She also reported no episodes of mental decompensation. Dr. Beason-Hazen then stated that the anxiety symptoms would cause the claimant to be absent more than four days a month (Ex. 9F/8).

**No controlling weight** and overall **little weight** was given to Dr. Beason-Hazen's August 2017 opinion, which has significant and unresolved internal conflict for mild limitations in work-related mental functioning and yet symptom severity so great as to cause high absenteeism. The opinion is not well-supported by objective medical evidence, and several of the identified symptoms or signs are not consistent with the primary care office notes that report full affect and the claimant's routine denials of any change in or loss of appetite. Dr. Beason-Hazen did not provide copies of her psychotherapy notes, and her May 2016 and January 2016 correspondences with Dr. Ahmed fail to support many of the identified symptoms and signs in support of her opinion. More critically, the opinion for mild limitations in social functioning and concentrating, persisting, or maintaining pace are highly inconsistent with the substantial evidence in the case record, including the moderate degree of impairment shown on the May 2016 neuropsychiatric [*sic*] evaluation and cognitive testing.

On the other hand, the opinion for more than four absences a month could be consistent with the claimant's testimony for multiple daily panic attacks and other symptoms, but the medical evidence fails to report such high frequency of episodes and overall shows a stable and conservative course of treatment for symptoms. Dr. Beason-Hazen does have an established counseling relationship with the claimant and carries a specialization in neuropsychology, but the opinion she gave is both internally conflicting, weak in support from her January 2016 and May 2016 letters to Dr. Ahmed, and otherwise inconsistent with her routine and once-monthly treatment visits to receive any significant weight.

(R. 11, tr., at 34-35 (emphasis in original).)

17

Ms. Favazzo contends that the ALJ's rationale for discounting the opinions of the treating sources was in error. (R. 12, PageID #: 438.) She argues that the ALJ "failed to consider the signs and symptoms noted by Dr. Beason-Hazen on August 9, 2017." (R. 12, PageID #: 434, citing R. 11, tr., at 352.) The court finds this argument unpersuasive. First, while the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single piece of evidence to support her decision. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004); *Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (citing *Thacker*). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, No. 04-5021, 2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Second, the ALJ acknowledged the symptoms identified by Dr. Beason-Hazen, even as the ALJ noted the provider "did not identify any clinical signs or other objective medical findings [to support claimant's diagnosis], and proceeded to identify a number of symptoms to include, for instance, generalized persistent anxiety and recurrent severe panic attacks, memory impairment, motor tension, mood disturbance and persistent disturbance of mood or affect, emotional lability and emotional isolation, and even appetite disturbance with weight change (Ex. 9F/5-6)." (R. 11, tr., at 34.) Continuing the analysis, the ALJ discounted the opinion because it "is not well-supported by objective medical evidence, and several of the identified symptoms or signs are not consistent with the primary care office notes that report full affect and the claimant's routine denials of any change in or loss

18

of appetite. Dr. Beason-Hazen did not provide copies of her psychotherapy notes, and her May 2016 and January 2016 correspondences with Dr. Ahmed fail to support many of the identified symptoms and signs in support of her opinion. More critically, the opinion for mild limitations in social functioning and concentrating, persisting, or maintaining pace are highly inconsistent with the substantial evidence in the case record, including the moderate degree of impairment shown on the May 2016 neuropsychiatric [*sic*] evaluation and cognitive testing." *Id.* at 35.

Furthermore, it is clear that the ALJ considered Dr. Beason-Hazen's August 2017 statement, at several other points in the decision. The ALJ refers to the same in discussing the issue of claimant's weight loss, specifically noting that the psychologist's August statement related to ongoing therapy sessions treating the claimant's anxiety, and that the statement focused on her psychological symptoms. (R. 11, tr., at 20, citing Ex. 9F/5-6 [*i.e.*, tr., at 351-352].) The ALJ later explicitly stated that little weight was given to this opinion because it had significant internal conflicts, *e.g.*, "mild limitations in work-related mental functioning and yet symptom severity so great as to cause high absenteeism." *Id.* at 35.

The court finds that the decision does provide good reasons for the weight assigned to the opinions, and is sufficiently specific to make clear the weight assigned to the treating source's opinion, and the reasons for that weight. The ALJ acknowledged that Ms. Favazzo had a treating and examining relationship with Dr. Beason-Hazen over a period several years (R. 11, tr., at 20, 25), and that the psychologist was a specialist in clinical neuropsychology (*id.* at 29, 35), but the ALJ found her opinions to be inconsistent, internally conflicting, and weak in support (*id.* at 25, 29-30, 34-35). *See generally* 20 C.F.R. § 404.1527(c). The court also notes that the ALJ's lengthy discussion of Dr. Beason-Hazen's relationship with the claimant and of the

psychologist's opinions, can hardly be characterized as their having been "summarily discounted." *See generally* R. 11, tr., at 18, 20, 23-25, 29-30, 31, 34-35

Although Ms. Favazzo contends the ALJ erred when considering the opinions from Dr. Ahmed, her argument is unavailing because Ms. Favazzo did not produce a medical opinion from Dr. Ahmed for the ALJ to consider. The relevant regulation provides:

> Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(1). In her discussion of Dr. Beason-Hazen's opinions, Ms. Favazzo suggests that the ALJ improperly discounted Dr. Ahmed's treatment notes that noted claimant's anxious appearance, and alleges this to be harmful error because such notes would support Dr. Beason-Hazen's opinions.[5] (R. 12, PageID #: 434-435.) The claimant also contends that the ALJ improperly discounted return-to-work notes that Dr. Ahmed authored seeking to excuse her absences. *Id.* at 434-435. The court finds that the referenced notes, which do not detail "symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions[,]" 20 C.F.R. § 404.1527(a)(1), do not provide a medical opinion as defined by the regulations. Further, the ALJ properly assigned little weight to the return-to-work notes—finding that they did not address Ms. Favazzo's medical condition in any detail but simply state "Diagnosis: Medical reasons"—because they merely provided an unsupported recommendation on an issue reserved to the Commissioner—whether the claimant

---

[5] The ALJ did not contest that Ms. Favazzo suffers from anxiety, finding that Ms. Favazzo's severe impairments included generalized anxiety disorder. (R. 11, tr., at 17.)

was able to work,. (R. 11, tr., at 33-34, citing 20 C.F.R. § 404.1527(d); *see generally* tr., at 306 (not able to return to work for "medical reasons"); 307 (same); 308 (same); 309; 310; 311; 322).)

The court finds no merit in the claimant's argument that the decision's treatment of Dr. Beason-Hazen's opinions violated the treating source rule, or was otherwise improper. In addition, the court finds that claimant did not produce a medical opinion from Dr. Ahmed for the ALJ to consider, thus the treating source rule was inapplicable and the court finds no error by the ALJ

### B. Medical Equivalence

Ms. Favazzo's second claim is that the ALJ failed to properly consider medical equivalence. (R. 12, PageID #: 434, 435-437.) The claimant contends that the ALJ did not fully consider the effects of her low Body Mass Index (BMI) under Listing 5.08. *Id.* at 435. Ms. Favazzo argues that, even though her weight loss was not attributable to a physical impairment, "the ALJ failed to consider whether the combination of the weight loss and her anxiety symptoms medically equaled a listing." *Id.*

In the Third Step of the sequential analysis, the claimant must show that her impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Wilson*, 378 F.3d at 548. It is claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a Listed Impairment. *Malone v. Commissioner*, No. 12-3028, 2012 WL 5974463, at *1 (6th Cir. Nov. 29, 2012) (per curiam) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)); *see generally Fleck v. Commissioner*, No. 5:15CV316, 2015 WL 5813320, at *10 (N.D. Ohio Oct. 5, 2015); *Ridge v. Barnhart*, 232 F.Supp.2d 775, 788 (N.D. Ohio 2002). A claimant who meets the requirements of an

impairment in the Listings will be found conclusively disabled and entitled to benefits. *Reynolds v. Commissioner*, 424 Fed.Appx. 411, 414 (6th Cir. 2011); *see also Bowman v. Commissioner*, 683 Fed. Appx 367, 372 (6th Cir. 2017). Each Listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* A claimant must satisfy all of the criteria to "meet" the Listing. *Id.*; *Gearhart v. Commissioner*, No. 5:12CV2105, 2013 WL 4430896, at \*6 (N.D. Ohio Aug. 15, 2013).

However, "a claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting medical findings equal in severity to all the criteria for the one most similar listed impairment." *Foster*, 279 F.3d at 355 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). An ALJ must "compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds*, 424 Fed.Appx. at 415; *Fleck*, 2015 WL 5813320, at \*10. An impairment or combination of impairments is considered medically equivalent to a Listed Impairment "if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Ridge*, 232 F.Supp.2d at 788 (quoting *Land v. Secretary, HHS*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam)).

In this case, the ALJ determined, at Step Two, that Ms. Favazzo has severe impairments of generalized anxiety disorder and panic disorder without agoraphobia. (R. 11, tr., at 17.) At Step Three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments. *Id.* at 21.

Regarding the specific issue of Ms. Favazzo's weight loss, the ALJ stated, in relevant

part, at Step Two:

> . . . upon a thorough review and analysis of all the written medical evidence . . .
> and counsel's arguments  . . . the undersigned finds no clear medical evidence,
> including opinions from medical sources who have treated the claimant,
> supporting the position that the claimant's weight loss . . . is a symptom that is
> reasonably related to her only medically determinable impairments of anxiety and
> panic disorders.  While it is well-taken that psychological disorders could result in
> some physical manifestations, that conclusion is not reasonably supported by the
> evidence in the case record for this claimant who has routinely denied any
> symptoms of an anxiety-related eating disorder, who has also consistently
> reported no loss of appetite or change in appetite patterns, whose husband
> confirmed the same at the hearing, and who otherwise has no connection
> grounded in symptomatology and clinical signs to support a reasonable
> connection between her weight loss and her mental symptoms.
>
> Furthermore, given that the claimant has had consistent and routine primary
> medical care with Dr. Ahmed since the month in which onset of disability is
> alleged, had additional diagnostic evaluation and treatment with specialist in
> mental health, Dr. Beason-Hazen, between December 2015 and July 2017, and
> has resumed psychological counseling with a different specialist as of October
> 2017 (*see* Ex. 11F), the undersigned is not finding any insufficiency in the
> evidence to suggest a need for further developing this issue—especially given all
> of the foregoing points of documentation from the claimant's actual treating
> medical sources, both primary care practitioners and licensed psychologists
> counselors.
>
> Therefore, the undersigned rejects counsel's position that the physical
> phenomenon of weight loss is "related to her mental impairment[s]" (Ex. 14E/3).
> The alleged symptom of weight loss and corresponding physical characteristics of
> her body habitus, including body build and low BMI between 15 and 17 as
> recorded by her primary care doctor, are not factors that the undersigned has
> considered in the following steps of the sequential evaluation process, because
> they are not symptoms reasonably caused by or otherwise related to her medically
> determinable mental impairments (SSRs 96-8p and 03-3p).

(R. 11, tr., at 20-21.)

In addition, at Step Three of the sequential analysis, the ALJ related the discussion above

to Listing 5.08, as follows:

23

Since the undersigned has already determined that the claimant's documented weight loss over the relevant period is not a symptom reasonably expected to be caused by any medically determinable mental or physical impairment, the undersigned does not entertain counsel's suggestion that a digestive system listing, 5.08 for weight loss "due to any digestive disorder" with BMI less than 17.50, could be medically equaled (Ex. 14E/3). Furthermore, since she has not had any treatment prescribed for symptoms that were attributed to IBS by her family doctor,[6] Listing 5.06B5 for similar weight loss at 10% from baseline cannot be considered.

(R. 11, tr., at 21.)

Ms. Favazzo argues that the ALJ failed to consider whether the combination of weight loss and her anxiety symptoms medically equaled Listing 5.08. (R. 12, PageID #: 435.) For a claimant's impairment or combination of impairments to meet or medically equal Listing 5.08, specific criteria must be met:

Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less that 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period.

20 C.F.R. § 404 App. 1, Listing § 5.08. In her argument for medical equivalence, Ms. Favazzo relies on the low BMI element, which she unquestionably meets (*see, e.g.*, R. 11, tr., at 332 (BMI of 16.06 on May 30, 2017), 341 (BMI of 17.00 on August 2, 2016)), along with her anxiety symptoms. (R. 12, PageID #: 435-436.) It is clear from the discussion quoted above, and the fuller, more extensive analysis in the decision, that the ALJ did consider whether the combination of weight loss and anxiety symptoms medically equaled Listing 5.08, and

---

[6] The court notes that irritable bowel syndrome (IBS) was first diagnosed by Dr. Ahmed at the November 29, 2016, visit (R. 11, tr., at 336), and only at that time; this diagnosis was not carried over into subsequent appointments (*id.* at 332, 334). Nor did Ms. Favazzo list IBS as among the physical or mental conditions that limit her ability to work. *See* R. 11, tr., at 195.

determined that it did not.  *See generally* R. 11, tr., at 18-21.  Ms. Favazzo simply considers that determination erroneous.

Additionally, Ms. Favazzo did not carry her burden to present medical findings equal in severity to <u>all the criteria</u> for Listing 5.08.  *See Foster*, 279 F.3d at 355.  As the ALJ notes, even assuming that irritable bowel syndrome is an applicable "digestive disorder" under the regulations (which claimant does not establish, *see generally* 20 C.F.R. § 404 App. 1, Listing §§ 5.00(B), 5.00(C)(1), 5.08; *see also* R. 12, PageID #: 435 ("her weight loss was not attributable to a physical impairment")), Ms. Favazzo does not demonstrate that her weight loss was ongoing "despite continuing treatment as prescribed."  20 C.F.R. § 404 App. 1, Listing § 5.08; *see generally* R. 11, tr., at 19 (Dr. Ahmed suggested only avoidance of dairy products for IBS, "but offered no medical treatment for her symptoms."); *see also Hamilton v. Berryhill*, No. 3:16CV1083, 2017 WL 1907264, at *7 (N.D. Ohio Apr. 5, 2017), *adopted by* 2017 WL 1838841 (N.D. Ohio May 8, 2017) (claimant did not show that she met Listing 5.08 requirement that she experienced weight loss due to any digestive disorder despite continuing treatment as prescribed); *Jones v. Astrue*, No. 1:12CV224, 2013 WL 811804, at *5 (S.D. Ohio Mar. 5, 2013), adopted by 2013 WL 5487416 (S.D. Ohio Sept. 29, 2013) (no evidence that claimant's weight was attributable to a severe digestive disorder despite "continuing treatment as prescribed").

The court finds no merit in the claimant's argument that the decision did not consider whether the combination of weight loss and anxiety symptoms medically equaled Listing 5.08.

<u>C.  Credibility</u>

Ms. Favazzo next claims that the ALJ's determination regarding credibility was not supported by substantial evidence and violated Social Security Ruling 16-3p.  (R. 12, PageID #:

425, 440.)  The claimant contends that the ALJ did not properly evaluate the medical evidence

and make a defensible determination as to whether her testimony was credible.  *Id.* at 441.

It is the ALJ's role, and not this court's, to evaluate the credibility of the claimant.

*Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007).  An ALJ's findings based on the

credibility of the claimant are accorded great weight and deference, particularly since the ALJ

observes a witness's demeanor and credibility.  *Cruse v. Commissioner*, 502 F.3d 532, 542 (6th

Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL

584927, at *5 (W.D. Mich. Jan. 17, 2008).  Nevertheless, an ALJ's assessment of a claimant's

credibility must be supported by substantial evidence, based on a consideration of the entire

record.  *Rogers*, 486 F.3d at 247; *Walters*, 127 F.3d at 531; *Gonzalez*, 2008 WL 584927, at *5.

Ms. Favazzo specifically alleges a violation of Social Security Ruling 16-3p.  (R. 12,

PageID #: 440.)  Social Security Ruling 16-3p lists the factors relevant to the ALJ's

determination regarding credibility of the claimant's alleged disabling symptoms.  *Rogers*, 486

F.3d at 247.  These factors include: the individual's daily activities; the location, duration,

frequency and intensity of the individual's pain or other symptoms; any medication the

individual takes or has taken to alleviate pain or other symptoms; treatment, other than

medication, the individual has received for relief of pain or other symptoms; any measures other

than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors

concerning an individual's functional limitations and restrictions due to pain or other

symptoms."  SSR 16-3p, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No.

16-1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017).  An ALJ is not required to expressly

address all the factors listed in SSR 16-3p, but should sufficiently articulate her assessment of the

evidence to assure the court that she considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ first determined that Ms. Favazzo's anxiety and anxiety-related disorders qualified as "severe" impairments. (R. 11, tr., at 18.) The ALJ then stated:

> These mental impairments could reasonably be expected to produce the claimant's alleged symptoms of chronic generalized anxiety symptoms and depression; periodic "panic attacks" that include acute shortness of breath, heart palpitations, shaking, crying spells, and difficulty concentrating; as well as developing symptoms of mental confusion, difficulties with comprehending and understanding, and impaired memory (Ex. 2E/2; 3E/1, 8; 5E/2, 6; 6E/2, 5-6).

*Id.* The claimant concedes, quoting the above in full, that the ALJ did find her testimony concerning her symptoms was credible. (R. 12, PageID #: 441-442.) She asserts, however, that "a decision finding her capable of performing work on a sustained basis was not supported by the record." *Id.* at 442. Ms. Favazzo, however, provides no further argument in support of this conclusory statement.

Although Ms. Favazzo's brief initially contends that "the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Ms. Favazzo's testimony was credible" (R. 12, PageID #: 441), she subsequently concedes that "the ALJ found her testimony credible" (*id.* at 442), only to move on to a different claim with a conclusory argument. Neither position provides sound reasoning for remanding the ALJ's decision. Rather, the court finds that Ms. Favazzo has failed to demonstrate that the ALJ's determination regarding credibility lacked the support of substantial evidence or violated SSR 16-3p.

D. Step Five

Finally, Ms. Favazzo contends that the ALJ did not meet her burden at Step Five of the sequential evaluation. (R. 12, PageID #: 425, 442.) Once the ALJ determines claimant does not

have the residual functional capacity to perform her past relevant work, the burden shifts at Step

Five to the Commissioner to show that claimant possesses the capacity to perform other

substantial gainful activity that exists in the national economy.  *Wilson*, 378 F.3d at 548; *Varley*

*v. Sec'y, HHS*, 820 F.2d 777, 779 (6th Cir. 1987).  To meet this burden, there must be "a finding

supported by substantial evidence that [plaintiff] has the vocational qualifications to perform

specific jobs."  *Varley*, 820 F.2d at 779 (quoting *O'Banner v. Sec'y, HEW*, 587 F.2d 321, 323

(6th Cir. 1978)).  The ALJ may rely upon the testimony of a vocational expert (VE) at Step Five.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as

substantial evidence in support of the conclusion that a claimant can perform other work, the

question must accurately portray a claimant's physical and mental impairments."  *Ealy*, 594 F.3d

at 516; *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *13

(6th Cir. June 23, 2005); *Varley*, 820 F.2d at 779 (citing cases).

Hypothetical questions need only incorporate those limitations which the ALJ has

accepted as credible.  *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th

Cir. March 15, 2011); *Casey v. Secretary, HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).  In

addition, the court notes that the hypothetical question need only reference the claimant's

limitations, and need not list the claimant's medical conditions.  *Webb v. Commissioner*, 368

F.3d 629, 633 (6th Cir. 2004) (citing *Foster*, 279 F.3d at 356); *see also Brantley v.*

*Commissioner*, 637 Fed. Appx 888, 897 (6th Cir. 2016) (hypothetical need not include

comprehensive list of claimant's medical conditions, citing *Webb*).

Ms. Favazzo argues that the ALJ "did not take into consideration the effects of the

combination of her listing level BMI and anxiety symptoms."  (R. 12, PageID #: 442.)  She states

that the ALJ relied on a hypothetical question that did not include the effects of these limitations on her ability to sustain work activities. (R. 12, PageID #: 443.) The claimant asserts that the decision should be remanded "for testimony as to whether the combination of Ms. Favazzo's severe impairments would allow her to engage in substantial gainful activity at the medium level of exertion on a sustained basis." *Id.* at 443.

As already discussed above, the ALJ rejected the theory that Ms. Favazzo's weight loss was a symptom reasonably expected to be caused by any medically determinable mental or physical impairment. (R. 11, tr., at 18-21.) The ALJ did not include any limitations based on her BMI because she did not find any functional limitations caused by the BMI. During the administrative hearing, the ALJ asked the VE hypothetical questions to find out if an individual with the claimant's age, education, past job experience, and the following limitations could perform any work in the national economy:

> Q. *** So, individual is limited to repetitive task that can be learned in 30 days or less; no tasks that involved high production quotas or fast paced production demands such as you find with assembly line work, but the individual is able to perform goal oriented work such as office cleaning.
>
> All right. Occasional interaction with co-workers, no interaction with the public, should be a non-public setting; and no tasks that involve customer service duties, confrontation, conflict resolution, directing work of others, persuading or influencing others or being responsible for the safety or welfare of others; and there should be only occasional changes in workplace tasks or duties with any such changes being gradually introduced and easily explained.

*Id.* at 76. The VE confirmed that such a person could not perform claimant's past relevant work because it was at a skilled level and would exceed the residual functional capacity. *Id.* The ALJ then confirmed the appropriate level was unskilled and medium exertion level. *Id.* at 77. The VE identified three categories of positions such person could perform at the unskilled medium

work level: laundry worker, which at the time included approximately 200,000 positions nationally, vehicle cleaner with approximately 136,000 positions nationally, and general cleaner with approximately 100,000 positions nationally. *Id.*

The limitations supported by the hypothetical and set forth in the RFC accounted for the mental limitations the ALJ found to be documented by the medical evidence of record. *See, e.g.*, R. 11, tr., at 22, 25-26, 76-77, 99, 353. Hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible, and need not list the claimant's medical conditions. *Brantley*, 637 Fed. Appx at 897; *Parks*, 2011 WL 867214, at *9; *Webb*, 368 F.3d at 633; *Casey*, 987 F.2d at 1235.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144, 1996 WL 428403, at *4 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). The court finds that the ALJ's determination is supported by substantial evidence, as set forth above and in the decision.

VIII.  CONCLUSION

After thoroughly considering the parties' arguments, the pertinent law and the underlying administrative record, the court finds that the ALJ's decision is supported by substantial evidence.  Therefore, the Commissioner's final decision is affirmed for the aforementioned reasons.

<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge

Date:   <u>April 14, 2020</u>